509 So.2d 668 (1987)
Marc T. BARRAS, Plaintiff,
v.
David BENOIT, Defendant-Appellant,
Larry BENOIT, Defendant, and
Prudential Property & Casualty Insurance Company, Defendant-Appellee.
No. 86-527.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1987.
Edward J. Marquet, of Juneau, Hill, Judice, Hill, & Adley, Hank Seldon Hannah, John R. Shea and Larry Benoit, Lafayette, for defendant-appellant.
F. Ray Mouton, Jr., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and KNOLL, JJ.
DOMENGEAUX, Judge.
This suit arose as the result of an altercation which took place on November 11, 1982, at about midnight, in the parking lot of the Grant Street Dancehall, a local nightspot in Lafayette, Louisiana. The plaintiff Marc T. Barras, brought this action to recover damages for the injuries he allegedly sustained during the fight. Named as defendants were David Lynn Benoit and Larry Jude Benoit, the brothers who allegedly assaulted and battered the plaintiff, and the Prudential Property & Casualty Insurance Company (Prudential), the homeowner's insurance carrier of Martin E. Benoit, David and Larry's father.
Prudential, relying on the depositions of the parties and the insurance policy of Martin Benoit, moved the court pursuant to La.Code Civ.Proc. art. 966 (1960) (amended 1966, 1983 & 1984) to render a summary judgment in its favor. Prudential contended it was entitled to a summary judgment because Martin Benoit's homeowner's policy excluded coverage for "bodily injury ... which is either expected or intended from the standpoint of the Insured."
The trial court granted Prudential's motion concluding that there were no genuine issues as to material fact and that Prudential was entitled to judgment as a matter of law. The court, in written reasons, held "[t]he nature of the altercation and subsequent injury clearly indicates that the allegations of liability if proven must be based upon an intentional tort."
On appeal, only David Benoit, an "Insured" according to the terms of the Prudential *669 policy, and Prudential, the insurer, are before the court. Martin Benoit, although the "Named Insured" on the policy, was never a party to this suit. Neither Larry Benoit nor Marc Barras have appealed.[1]
We are obligated on appeal, because the record in this case consists entirely of written evidence, to review the record and determine, independent of the trial court's decision, whether Prudential established its right to summary judgment. Absent testimony in open court, a trial court is in no better position than an appellate court to evaluate credibility and resolve conflicts in testimony. Farris v. Ducote, 293 So.2d 589 (La.App. 3rd Cir.1974), writ denied, 295 So.2d 814 (La.1974); and Gould v. State Through La. Dept. of Correct., 435 So.2d 540 (La.App. 1st Cir.1983), writ denied, 438 So.2d 1107 (La.1983).
The issue presented by this appeal is, "Was the bodily injury received by Marc T. Barras expected or intended from the standpoint of David Lynn Benoit?"
The Louisiana Supreme Court in Pique v. Saia, 450 So.2d 654 (La.1984) was confronted with an issue very similar to the issue in the instant case. The insurance policy in Pique read exactly as Prudential's policy, excluding coverage for "bodily injury ... which is either expected or intended from the standpoint of the Insured." Id. at 655. The Court concluded that the policy language was ambiguous and that the ambiguity, based upon settled principles of law, should be resolved against the draftsman. La.Civ.Code arts. 2056 and 2057 (1984), formerly arts. 1956 and 1957; Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981); Benton Casing Service, Inc. v. Avemco Ins., 379 So.2d 225 (La.1979); and Credeur v. Luke, 368 So.2d 1030 (La.1979).
The Pique court, construing the policy provision against the draftsman, the insurer, interpreted the clause to only exclude coverage for intentional, as opposed to merely negligent, injuring. The Court held that an injury is intentional,
only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to the result. (Emphasis added). Id. at 655.
Marc Barras testified that he left the Grant Street Dancehall at about midnight on the night in question. He left with his sister, Lorin, so that he could walk her to her car. Marc testified that as he and Lorin approached Lorin's car they noticed a number of individuals standing around Lorin's car and a jeep parked adjacent to it. Upon arriving at the car, Lorin asked the individuals, later learned to be the defendants and three of their friends, to move aside and allow her to back out.
Before Lorin had exited the parking spot, one of the individuals, exactly who is unknown, said "I hope you don't find too many dents in your car." This remark caught Marc's attention and he inspected his sister's car as she backed out. Marc's inspection led to the discovery of a dent in the rear driver's side door.
After Lorin had completely exited the parking spot, Marc stopped her to discuss the dent. Lorin's car, at this point, was directly behind the defendants' jeep and blocked it in.
Subsequent to Lorin exiting the parking spot, the defendants and their friends decided to leave. Marc testified that as he spoke with his sister the driver of the jeep, David Benoit, began to blow his horn and requested in very vulgar language that Lorin move her car.
After Lorin left, Marc began to walk to his car. He testified that as he walked towards his car, the jeep backed out and the individuals in the jeep began to belittle and intimidate him. Marc stated that he attempted to ignore the taunts.
David Benoit testified that after patiently waiting for Lorin to move her car, he politely asked her to allow him to leave. Apparently David's patience and polite *670 manner were short-lived. The evidence does not suggest the jeep's departure was delayed for very long and David testified that Lorin only moved her car after he shouted a couple of "M.F." words.
After Lorin pulled away, David testified, Marc remained behind the jeep, just staring at it. David stated that he then got out of the jeep and walked, as both he and his brother by coincidence testified, "at a normal pace" towards Marc. Once face to face, David remembers Marc removing his glasses. Marc's testimony differs.
Following his brother out of the jeep was Larry Benoit. After Larry exited the jeep, the evidence indicates he said something to the extent of "Either fight, or let's go home." The fight then ensued.
As one might suspect, there are three versions of how the fight began. Marc testified that as he was leaving the scene and ignoring the taunts, he received an unexpected blow to the right side of his head. David testified that he was not aware of exactly what transpired because he was returning to the jeep and his back was to Marc. Larry stated that as David turned towards the jeep, Marc reared back in an attempt to hit David. Larry further stated that to defend his brother he delivered two blows to Marc's head before Marc could hit David.
Marc stated that upon being struck he was at first stunned, but upon realizing he had been hit he began running towards the entrance of the dancehall, approximately one block away. He testified that he was pursued as he ran but, he did not know by whom because he hesitated to look back. Marc further stated that he was hit a number of times as he raced towards the dancehall.
Upon reaching the dancehall, he kicked at his pursuers to repel their attack and dashed into the dancehall. Once inside, Marc stated that he threw his glasses on a nearby counter and then threw a chair in the direction of the people chasing him. Before the fight could continue further, the dancehall security personnel arrived on the scene.
David testified that his account of the fight was not very clear after the point at which he turned his back on Marc and began to return to his jeep. He stated that he did remember seeing Marc falling backwards and Marc saying "What's wrong; he can't fight his own fight?". David also rememberd Marc kicking at him and that he did swing and kick back. David did not, however, ever remember making contact, despite the fact that he testified that it was all "pretty wild."
David also testified that as Marc attempted to retreat he pursued him. When asked why he pursued Marc, he could only say that he was not sure. When questioned, "Is it accurate that he [Marc] was backing away from you the whole way?", he replied, "Yes."
David testified, as did Marc, that the fight ended when he and Marc entered the dancehall.
Larry Benoit's deposition reads substantially similar to his brother's. Larry testified that David chased Marc into the dancehall. Although he was not sure if either David or Marc struck the other with clenched fists, he did state that they kicked each other. Larry also testified that both David and Marc were kicking and swinging wildly.
We are firmly convinced, based upon a thorough review of the record, that if Marc Barras could substantiate any injuries, those injuries were either expected or intended by David Benoit. David's conduct indicates that he either consciously desired to injure Marc or he knew to a substantial certainty that injuries would result.
The evidence indicates that David swung and kicked at Marc. The testimony of both Marc and Larry establishes that David did land blows. The only conclusion which we can draw from the aggressive nature of David's actions is that he intended to injure Marc.
Particularly significant is the fact that David pursued Marc after Marc demonstrated an unambiguous intent to retreat from the brawl. The fact that David could not explain why he pursued Marc only leads us to the conclusion that it was not in self-defense. Whether or not Marc actually attempted to strike David is seriously *671 doubted but, the evidence is conclusive that Marc attempted to withdraw and David only terminated his pursuit upon the arrival of the dancehall security personnel.
In Guilbeau v. Roger, 443 So.2d 773 (La.App. 3rd Cir.1983), we addressed the issue of insurance coverage under circumstances similar to the instant case. The parties in Guilbeau were neighbors. Apparently as the result of an accusation that the defendant was raking leaves onto the plaintiff's yard, a fight erupted.
Subsequent to a period of "fussing" the defendant entered her garage and emerged armed with a rake. Id. at 774. The defendant stated, as she approached the plaintiff, that she was "coming to get" her. Id. at 774. When the defendant attempted to strike the plaintiff, the plaintiff warded off the blow, dropped her rake and grabbed the defendant's hair. The defendant, in turn, reciprocated.
During the struggle, the defendant pushed the plaintiff to the ground. She then told the plaintiff to get up, at which time she used all her strength and again shoved the plaintiff to the ground.
The plaintiff, by the defendant's own account, attempted to retreat from the fight. The defendant testified that the plaintiff "gave in" after the initial hair pulling incident. Id. at 775. Despite the plaintiff's desire to withdraw, and without any apparent need to defend herself, the defendant continued the fight.
We concluded in Guilbeau that the conduct and statements of the defendant indicated an intent to injure. We believe Guilbeau is analagous to the instant case and for the same reasons hold that the conduct and statements of David Benoit evidence an intent to injure.
It is the defendant's position that even if the plaintiff could subsequently establish injuries, those injuries were not intentionally caused by him. The defendant argues that, at most, only his "acts" and not any of the alleged "injuries" ere intentional. In support of his position that coverage is only precluded when the injuries, as opposed to the acts, are intended, the defendant relies on Kling v. Collins, 407 So.2d 478 (La.App. 1st Cir.1981); Sherwood v. Sepulvado, 362 So.2d 1161 (La.App. 2nd Cir.1978); and Rambin v. Wood, 355 So.2d 561 (La.App. 3rd Cir.1978).
In each of the cases cited by the defendant, a distinction was drawn between intentional acts and intentional injuries. Although the acts in the cited cases were intended, the injuries which resulted from those acts were not intended. We believe, after reviewing the circumstances surrounding the altercation in the instant case, that no conclusion, other than an intent to injure, can be deduced.
The defendant has also argued that the "net effect" of the trial court's decision is that Prudential has no duty to defend David Benoit. This conclusion is erroneous. Whether an insurer has a duty to defend its insured is an issue entirely distinct from its liability for damages. The question addressing Prudential's duty to defend its insured is not properly before this Court and will not be reviewed.
For the above and foregoing reasons, the decision of the district court granting the motion for summary judgment in favor of the Prudential Property & Casualty Insurance Company and against Marc T. Barras, David Lynn Benoit, and Larry Jude Benoit is affirmed.
All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.
NOTES
[1] David and Larry were both of legal age at the time of the incident. The record is not completely clear that David, at that time, was a resident of his father's household, but the briefs indicate as much.