518 So.2d 1154 (1987)
Felicia Williams JOHNSON, et al.
v.
Revie Spears HITCHENS, et al.
Linda Marie HOLMES, et al.
v.
Revie Spears HITCHENS, et al.
Nos. CA-7361, CA-7362.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1987.
Rehearings Denied February 11, 1988.
*1155 John J. Hainkel, Jr., William Ryan Acomb, Porteous, Johnson, Hainkel & Sarpy, New Orleans, for defendant/appellee.
Cameron C. Gamble, Metairie, for plaintiff-appellant Felicia Williams Johnson.
Harry P. Gamble, New Orleans, La., for plaintiffs-appellants Linda Marie Holmes, et al.
Before GULOTTA, C.J., and SCHOTT, BARRY, LOBRANO and WARD, JJ.
LOBRANO, Judge.
In this suit to recover damages for the wrongful death of Clarence Johnson, Jr., plaintiffs, the alleged heirs of Johnson, appeal from a summary judgment dismissing their demand against Hitchens' homeowners insurer, Allstate Insurance Co. The issue on appeal is whether the trial court was correct in granting the insurer a summary judgment.
Plaintiffs allege that Johnson was an invitee in Hitchens' home on March 1, 1984 to discuss the return of Johnson's rent deposit, that Hitchens threatened Johnson with a loaded gun; placed Johnson in a dangerous situation which Hitchens knew to be dangerous or should have known to be dangerous and failed to warn Johnson of the danger to which he was exposed. Hitchens' answer denies all allegations of plaintiffs' petition specifically asserting that Johnson was not an invitee; that Johnson trespassed on Hitchens' property and refused to leave when asked to do so; that Johnson cursed and threatened Hitchens; that Johnson behaved in a loud, boisterous and threatening manner; that Johnson reached for a weapon and created a situation wherein any average reasonable person could have been fearful of their life, limb and property and would have acted in self defense.
Defendant, Allstate Insurance Co. filed a motion for summary judgment on the grounds that since Revie Hitchens shot Johnson, liability coverage under Hitchens' homeowners policy is not provided because of the "intentional act" exclusion which provides that the policy does not cover "bodily injury or property damage intentionally caused by an insured."
Plaintiffs argue that there exists an issue of material fact as to whether Hitchens' act was intentional. They further argue that even if the act is found to be intentional, Louisiana law excepts self defense from the "intentional act" exclusion.
Defendant argues there is no factual issue concerning whether the act was intentional. They also assert that self-defense is not an exception to the policy exclusion.
Because of our ruling on the first issue, it is not necessary to address the second.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to a judgment as a matter of law. La.C.C.Pro. Art. 966. Allstate relies on plaintiffs' allegations that Hitchens shot Johnson and on the deposition testimony of Hitchens. In particular, they rely on the following portions:
"Mrs. Hitchens:
I just stole up and shot at him.

*1156 Q. When you pulled your gun, around, you pointed it at him?
Mrs. Hitchens:
Yeah, I pointed it at him. I just stole up and shot right at him....
Q. And so you intentionally shot your gun?
Mrs. Hitchens:
Right, I fired my gun....
Q. You intented to stop him?
Mrs. Hitchens:
I was intending to stop him from pulling his gun.
Q. And how were you going to stop him?
Mrs. Hitchens:
That the only way to stop him is to shoot him. If I hadn't, he would have shot us. He would have killed us."
Allstate asserts that the above testimony supports the conclusion that Hitchens' act was intentional.
An intentional injury has been defined by our Supreme Court as follows:
"An injury is intentional, i.e. the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to the result." Pique v. Saia, 450 So.2d 654 (La.1984) at 655.
Clearly that definition requires the determination of subjective factors. Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. Langlois v. Eschet, 378 So.2d 189 (La.App. 4th Cir.1979), citing, Hall v. Management Recruiters of New Orleans, 332 So.2d 509 (La.App. 4th Cir.1976); Berger v. Fireman's Fund Insurance Company, 305 So.2d 724 (La.App. 4th Cir.1974); Johnson v. Fairmont Roosevelt Hotel, Inc., 286 So.2d 177 (La.App. 4th Cir.1973); Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La.App. 3rd Cir.1969).
Allstate's argument is predicated on the admissions made by Hitchens in her deposition. A reading of the entire deposition indicates to this Court that a trial on the merits is necessary for a proper determination of the intent issue. For example, Hitchens was asked:
"Q. When you shot him where did you aim?
A. Well, I'm going to tell you, I really don't know. I just stole up and shot at him."
* * * * * *
"Q. Okay. Were you aiming at his chest or his legs or what?
A. I'm going to be frank. I really don't know. All I was aiming at was him. That's all I was aiming at because I was scared."
Although we do not suggest that plaintiff should prevail in this litigation, we are of the opinion that the trial court should weigh all of the facts and circumstances surrounding the incident in determining intent. All but one case relied on by Allstate suggests this result since all involve judgments rendered after trial on the merits.[1] This conclusion is consistent with the result we reached in Langlois v. Eschet, supra, wherein we stated:
"The word `intended' is synonymous with having in mind as an end or aim, implying that the mind is directed to some definite accomplishment or end. A result which is intended reasonably means one which is planned, contemplated or studied. Therefore, under a reasonable construction of the policy language favorable to the insured the exclusion should be applied only when the insured had a reasonable opportunity for adequate reflection on the consequences before acting in the manner which caused the damages. Such a determination can *1157 hardly be made without a trial on the merits." (footnote omitted)
* * * * * *
"For example, if the trial court concluded after trial that no danger existed and there was no basis for the insured to believe that it did, but that the insured in good faith believed a danger existed and acted accordingly, the insured might be said to have not intended the injury (and thus would not be liable for an intentional tort), but would be liable for negligent injury because of his unreasonable conduct under the circumstances, in which case the insurance policy might be held to provide coverage for his negligent act." Id. at 190-191.
REVERSED AND REMANDED.
SCHOTT, J., concurs with reasons.
BARRY, J., joins majority with additional reasons.
WARD, J., dissents with reasons.
BARRY, Judge, joins the majority with additional reasons.
I read the "intentional" policy language to exclude a tortious act which is initiated by the insured, i.e., the initial affirmative act with premeditated specific intent to cause bodily harm.
Also, public policy should not eliminate a valid claim of self-defense, as under these facts.
Only if the insured is the culprit should coverage be excluded.
SCHOTT, Judge, concurring:
I agree with Judge Ward that Mrs. Hitchens acted intentionally when she pulled the trigger of a loaded gun aimed at the victim. I cannot rationalize any other conclusion. However, I am not convinced that this defeats coverage under the policy in view Hitchens' assertion that she acted in self-defense.
There is a split of authority throughout the country as to whether, or under what circumstances, acts in self-defense are within the provision of a liability insurance policy excluding coverage for injury intentionally caused by the insured. Some of these cases are listed and discussed in the annotation at 34 ALR 4th 761, and a number of Louisiana cases are cited as supporting the view that an injury resulting from an act committed by an insured in self-defense is not an expected or intended injury within the meaning of an intentional injury clause like the one under consideration.
None of these cases directly addresses the issue, and, to my knowledge, no such case has been decided in Louisiana. Although the dissenting judge in Brasseaux v. Girouard, 269 So.2d 590 (La.App. 3rd Cir.1972) took the position that an intentional act in self-defense should be covered, this was not the issue on which the majority opinion turned. In Cooper v. Anderson, 385 So.2d 1257 (La.App. 4th Cir.1980) this court did not decide the issue but specifically declined "to review the conflicting allegations or to analyze our jurisprudence on accidental (responsive) versus intentional acts as they relate to insurance indemnification" in the setting of an appeal from the granting of a summary judgment in favor of the insurer. The court held that the issue should be determined after a trial on the merits.
I agree with this approach because the facts may very well eliminate the possibility that Hitchens acted in self-defense. In that case the legal issue which concerns me would not be reached. This court should not in reviewing a summary judgment anguish over and grapple with an issue which may prove to be academic after trial on the merits.
Therefore, I concur with the majority in a reversal of the summary judgment and defer a resolution of the self-defense issue which I believe may be the only viable issue in the case.
WARD, Judge, dissents.
Allstate's policy excludes "bodily injury intentionally caused by an insured person." The insured, Revie Hitchens, stated in her deposition that she aimed her gun at Clarence Johnson and that she intentionally fired, "intending to stop him from pulling *1158 his gun." These statements are uncontroverted by the plaintiffs who nonetheless argue that there is insurance coverage because Mrs. Hitchens pleads the justification of self defense. In accepting this argument and holding that summary judgment is inappropriate, I believe the majority erred by confusing intent with motive.
To determine whether, in the context of the insurance policy exclusion, Mrs. Hitchens intentionally caused the death of Clarence Johnson, I would look to the definition of intent accepted in other legal contexts. In Bazley v. Tortorich, 397 So.2d 475 (La. 1981), the Supreme Court construed the statute which makes worker's compensation the exclusive remedy of an injured worker unless the injury results from an "intentional act." Citing both Prosser on the common law of torts and our Criminal Code, the Court set forth the following definition:
The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.
397 So.2d at 481.
Both Prosser and the Louisiana Criminal Code distinguish intent and motive, and both the common law and the criminal law view self defense as a matter of motive, not of intent.
Prosser says,
"Intent" is the word commonly used to describe the desire to bring about the physical consequences, up to and including the death; the more remote objective which inspires the act is called "motive." The one is merely a step less removed from the muscular contraction than the other. Each has its own importance in the law of torts, and a justifiable motive, such as that of self-defense, may avoid liability for the intent to kill.
W. Prosser, Law of Torts, § 8 (4th Ed., 1987).
The Louisiana Criminal Code Article 10 defines specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Under the criminal law, once intent has been established, and only if intent has been established, then the justification of self defense becomes relevant. La.R.S. 14:18. Hence, Mrs. Hitchens's motive, even if erroneous, is of no consequence because motive relates to justification for the act, which presupposes that the injury was caused intentionally.
Moreover, the rule relied upon by the majority that summary judgment is inappropriate for a determination of intent has application only when intent is a disputed fact; there is no issue as to whether Mrs. Hitchens acted intentionally. Counsel for plaintiff in argument concedes there was an intent to kill or inflict great bodily harm. I, therefore, believe Langlois v. Eschet, the only pertinent case cited by the majority, is dissimilar, and easily distinguished because in that case the defendant filed an affidavit stating that he had no intention of striking or injuring the plaintiff's son.
I am sympathetic to the factual background which underlies the issue of insurance coverage in this case. But neither sympathy nor hard facts should obliterate the definition of intent; nor should we use one definition in one instance and a different definition in another, ignoring our Supreme Court's interpretation while we do so.
Furthermore, if a claim of self defense is sufficient to defeat a motion for summary judgment, there will undoubtedly be claims of self defense, encouraged by this case, where the facts are not as appealing as in this case. If, regardless of how clear the insured's intention to cause the injury, summary judgment is not appropriate, then all the refinements of self defense will become part of the issue of insurance coverage. To determine if the exclusion applies, it will be necessary to litigate: the question of excessive force (See, R.S. 14:19 and 14:20); the question of who was the *1159 aggressor (See, R.S. 14:21); and whether the victim withdrew from the conflict.
Accordingly, I am convinced that the exclusion of intentionally caused injuries, even when inspired by "good" motives, not only gives to the language of the policy a fair reading of the meaning of intent, but serves the best interests of justice.
NOTES
[1] Pique v. Saia, supra; Levesque v. Saba, 402 So.2d 266 (La.App. 4th Cir.1981); Walpole v. Weathersby, 465 So.2d 950 (La.App. 2nd Cir. 1985); Fleming v. Aetna Casualty Insurance Co., 461 So.2d 614 (La.App. 1st Cir.1984) writ den. 464 So.2d 302; Coleman v. Moore, 426 So.2d 652 (La.App. 1st Cir.1982); Tobin v. Williams, 396 So.2d 562 (La.App. 3rd Cir.1981). But see, Lawrence v. Moore, 362 So.2d 803 (La.App. 4th Cir. 1978).