550 So.2d 609 (1989)
William Karon BRELAND and Deborah Adams Breland
v.
Ronnie L. "Bug" SCHILLING.
No. 89-C-1061.
Supreme Court of Louisiana.
October 23, 1989.
John N. Gallaspy, Gallaspy & Paduda, Bogalusa, for applicant.
Mark Reggie Simmons and Clayton S. Knight, Franklinton, for respondents.
CALOGERO, Justice.
This case involves the interpretation of an intended injury exclusion clause in a liability insurance policy, a matter which has given rise to innumerable cases both in this state and nationwide.[1]
The case poses two pertinent questions. First, where an insured punches another and fractures his jaw, what is the legal effect of a liability insurance contract provision barring coverage for "bodily injury... which is either expected or intended from the standpoint of the insured." Second, is a jury determination that the defendant insured did not intend the bodily injury to the plaintiff reasonably supported by the facts of this case under the appropriate legal construction of the policy language.
*610 The altercation which gave rise to this lawsuit arose during an Old Timers League softball game in Franklinton, La. on August 14, 1986. The defendant, Ronald "Bug" Schilling, was caught in a run down between second and third base. He raced toward third and slid head first. He was tagged out by the third baseman, William Karon Breland, who found need to step aside while making the tag lest he be run down by the aggressive base runner. After the play, as the defendant Schilling lay prone near third base, Breland either dropped, tossed, or threw the softball in the direction of the defendant. The ball struck Schilling on the chin. Words were instantly exchanged (plaintiff said he expressed regrets; defendant said no apology was made or that, if made, he didn't hear it), and defendant punched plaintiff Breland in the jaw.
Apparently because plaintiff's jaw was open at the time, he suffered unusually severe fractures. His jaw was broken on both sides of his face and had to be wired shut for twelve weeks. During this time, plaintiff was unable to eat solid foods and lost thirty pounds. He suffered from depression. He retains scars from this injury on both sides of his face.
In answer to interrogatories posed by the trial judge, the jury decided that the defendant Schilling did not intend the bodily injury to plaintiff, but that the defendant was negligent or at fault. The jury determined that plaintiff Breland was also negligent, and assigned defendant 75% fault, plaintiff 25%. Plaintiff's award of $45,000, and his wife's loss of consortium award of $5,000, were reduced by plaintiff's percentage of fault, to $33,750 and $3,750, respectively.
At issue here is an exclusion clause in the homeowner's liability insurance policy covering defendant. The clause provides:

EXCLUSIONS
This policy does not apply:
1. Under Coverage E-Personal Liability and Coverage F-Medical Payments to Others:
* * * * * *
f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.
The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." Transamerica Ins. Group v. Meere, 143 Ariz. 351, 694 P.2d 181, 186 (1984). Accord, United Servs. Auto. Ass'n v. Elitzky, 517 A.2d 982 (Pa.Super.Ct.1986).
The purpose of liability insurance, on the other hand, is to afford the insured protection from damage claims. Policies should be construed to effect, not deny, coverage. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1090 (La.1984); LeJeune v. Allstate Ins. Co., 365 So.2d 471, 479 (1978). And an exclusion from coverage should be narrowly construed. Snell v. Stein, 261 La. 358, 259 So.2d 876 (1972).
The effect of the language used in this exclusion clause is not always clear. In fact, when construed in light of the myriad fact situations to which it has been applied, it is often ambiguous. See Annot., supra, 31 A.L.R. 4th 957, 978 n. 1. This Court noted in Pique v. Saia, 450 So.2d 654, 655 (1984) that the clause is indeed ambiguous.
Ambiguity in an insurance contract must be resolved according to the general rules governing contract interpretation. Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1964). Unless ambiguous, words used in an insurance contract will be given their commonly prevailing meaning. La.Civ.Code art. 2047. Ambiguous policy provisions are to be construed against the confector, the insurer. La.Civ.Code art. 2056; Salomon v. Equitable Life Assurance Soc'y of U.S., 202 La. 1001, 13 So.2d 329 (1943). Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the *611 insurance contract was entered.[2] See La. Civ.Code art. 2045.
This clause does not by its precise terms exclude coverage for bodily injury caused by the insured's intentional act. Rather, it excludes coverage for bodily injury "expected or intended from the standpoint of the Insured." The phrase "bodily injury... which is expected or intended," emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury-producing act. The next phrase, "from the standpoint of the Insured," emphasizes again that it is the insured's subjective intention and expectation which delimit the scope of the exclusion. The subjective intention and expectation of the insured determine which injuries fall within and which fall beyond the scope of coverage under this policy.
This inquiry into the subjective intention or expectation of the insured contrasts sharply with the traditional tort inquiry into an actor's intent. The Restatement (Second) of Torts describes intended consequences as those which the actor knows are "substantially certain" to result from an act, whether the actor consciously desires those consequences or not. Restatement (Second) of Torts § 8A (1965); see also W. Prosser, Law of Torts § 8 (4th ed. 1971). While the inquiry regarding intentional torts asks which consequences an objective reasonable person might expect or intend as the result of a deliberate act, we are concerned, under the language of this insurance contract, with the injury subjectively intended or expected by the insured.[3]
The field of criminal law, like Civil Law tort principles, adheres to an objective standard for identifying an actor's intent. That standard looks to the natural and probable consequences of an act for determining whether the actor intended the actual result. La.R.S. 14:10.[4]
Furthermore, the inquiry into whether injuries are "intended or expected" by an insured under the terms of an insurance contract differs from the inquiry into whether an act is "intentional" under the worker's compensation statute's intentional acts exception to a co-employee's tort immunity. See La.R.S. 23:1032. Although the worker's compensation statute ordinarily limits to compensation the recovery available to an employee who suffers an on-the-job injury, the statute makes an exception for injuries produced by an employer's or co-employee's "intentional act." The statute provides, in pertinent part:
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act. (Emphasis added).
La.R.S. 23:1032.
In Bazley v. Tortorich, 397 So.2d 475, 480-81 (La.1981), this Court addressed the meaning of this statute's "intentional act" language, opining that the statute's "intentional act" exception mirrored the traditional distinction between intentional torts and negligence in common law. Id. at 480. The Court emphasized that in both the criminal and tort fields, "intent" refers to the consequences of the act, rather than to the act itself. Citing to Prosser and the Restatement (Second) of Torts, the Court held:

*612 The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did.... If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.
Bazley, 397 So.2d at 482. Bazley thus instructs that the tort-based intent standard should determine whether an act is intentional under R.S. 23:1032.
This tort-based standard exposes the actor to liability for injuries he did not in fact specifically envision or desire to produce. Thus, in Caudle v. Betts, 512 So.2d 389, 392 (La.1987), when a company officer administered an electric shock to a worker, intending to play a good-natured practical joke, yet nonetheless producing serious injury to the victim, we held the actor liable for all consequences flowing from his act. "The defendant's liability (under R.S. 23:1032) for the resulting harm extends ... to consequences which the defendant did not intend, and could not reasonably have foreseen...." Caudle, 512 So.2d at 392. By contrast, the contract of insurance between this defendant and his insurer excludes coverage only for those injuries which the defendant subjectively desired to inflict.
A decision by the Montana Supreme Court, Millers Mutual Ins. Co. v. Strainer, 204 Mont. 162, 663 P.2d 338 (1983), speaks directly to the distinction between the "intentional act" exception to a co-worker's tort immunity and the exclusion for "intended" bodily injury found in liability policies. As in our case of Caudle v. Betts, supra, a practical joke led to consequences which were clearly not intended by the insured.[5] The injured employee sued the co-employee in tort relying upon the intentional act exception to co-workers' tort immunity under Montana's worker's compensation statute.[6] When the tortfeasor third-partied his homeowner's liability insurer, the insurer argued that an intentional act under the statutory exception to co-worker tort immunity necessarily precluded coverage under the insurance policy's intended bodily injury exclusion clause. The Court disagreed, noting the difference between the statute's exception to tort immunity and the policy's exclusion for intended bodily injury:
(T)he insurance policy does not exclude intentional acts but only excludes bodily injury which is intended....
(I)ntentional acts are not excluded under an insurance policy unless the intentional act results in injuries which would be expected or intended. A person may act intentionally without intending or expecting the consequences of that act.
Id. 663 P.2d at 340, 341.
The Montana Supreme Court ordered the insurer to defend the insured and to provide coverage in event of a judgment.
Other courts have looked to the subjective intentions and expectations of the insured when resolving the ambiguity of this intended injury exclusion clause. The Supreme Court of Maine held that the exclusion "refers only to bodily injury that the insured in fact subjectively wanted (`intended') to be a result of his conduct or in fact subjectively foresaw as practically certain (`expected') to be a result of his conduct." Patrons-Oxford Mutual Ins. Co. v. Dodge, 426 A.2d 888, 892 (Me.1981) (emphasis in original). The New Hampshire Supreme Court found that "[t]here is no indication that `bodily injury ... expected or intended by the insured' refers to anything other than actual expectation or intention, as to the bodily injury, in the mind of the insured at the time he took the action allegedly resulting in injury." Mac-Kinnon v. Hanover Ins. Co., 471 A.2d 1166, 1167 (N.H.1984). In a similar vein, *613 the Elitzky court, supra, concluded that "[a]n insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." Elitzky, 517 A.2d at 989.
In adopting the fact-sensitive test for the insured's subjective intent, we reject the approach, followed by certain courts, that an insured intends, as a matter of law, all injuries which flow from an intentional act.[7]
There is, of course, difficulty in applying the intended injury exclusion in a situation where, although the insured acknowledges an intent to traumatize, a question exists as to the extent or gravity of trauma which the insured intended. What if the injury actually inflicted far exceeds that which a given defendant sought to visit upon a plaintiff? Are we to read the exclusion clause broadly, denying coverage regarding a substantial monetary claim on account of a slight or even negligible bodily injury that a defendant may have actually intended?[8] Or must we, at the other extreme, construe the clause narrowly, affording coverage unless the actual injury inflicted corresponds with the specific injury intended by the insured?
Between these two extremes lies a more moderate and reasonable interpretation, one consistent with the principles enumerated hereinabove, and one which gives effect to the reasonable layman's expectations concerning the scope of his liability insurance coverage.[9] Through the contract of liability insurance, the lay insurance purchaser protects hearth and home against risks which would otherwise devour his or her assets. The insurance purchaser expects that this contract will provide liability coverage against damage claims. An insurance purchaser would reasonably expect that a blow intended to bruise jaw and ego, and resulting in same, would fall beyond the scope of his liability insurance coverage, because the injury was intended "from the standpoint of the insured." The insurance purchaser would likewise conclude that an act intended or expected to inflict serious injury, and resulting in injury of such magnitude, or less, would be excluded from coverage. However, an insurance purchaser would also reasonably conclude that the fortuitous occurrence of more serious injuries, beyond the intended bruise to jaw and ego, would fall within the range of risks against which he has contractually insured himself. While the insurance policy, perhaps in part for public policy reasons, bars payment of claims for injuries "intended or expected ... from the standpoint of the insured," it does not bar coverage for unintentionally grievous injuries *614 which, though precipitated by the insured, were never intended by him.
We hold, therefore, that when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred. Whether a given resulting bodily injury was intended "from the standpoint of the insured" within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact, in this instance the trial jury.
The terms of this insurance contract dictate that the insured's subjective intent regarding bodily injury, as measured by the fact finder, controls whether coverage applies. A review of the record indicates that this defendant's subjective intent was given reasonable construction by the jury. The defendant testified that he thought the plaintiff might have been ready to swing first and he just tried to protect himself the best he could. R. at 404. The defendant stated that he didn't intend to break the plaintiff's jaw, R. at 395, or do plaintiff any serious harm, that the broken jaw was just a "freak accident." R. at 404. In this regard, there was no contrary evidence. Defendant testified that he if he hit another ten people he didn't think he could break another jaw. It is evident that the jury concluded, and not without support in the record, that the defendant did not intend to break plaintiff's jaw and that he did not intend to inflict any similar serious injury.
The jury here was adequately instructed. In fact, the jury charge was arguably more favorable to the insurer than is required. The focus of the charge was on the result of an intentional act, rather than upon the intended or expected bodily injury.[10] And in response to the interrogatory "Do you find that defendant, Ronald "Bug" Schilling, intended the bodily injury to plaintiff, William Breland?" the jury responded "No." On the evidence presented, the finding of the district court and the court of appeal that this plaintiff's serious bodily injury was not intended or expected from the standpoint of the insured was correct.

Decree
Accordingly, the judgments of the district court and the court of appeal are affirmed.
AFFIRMED.
DIXON, C.J., and DENNIS, J., concur.
WATSON, J., joins in the opinion and concurs. For a softball case in point, see Borque v. Duplechin, 331 So.2d 40 (La. App. 3 Cir.) writ den. 334 So.2d 210 (La. 1976).
LEMMON, J., concurs and assigns additional reasons.
LEMMON, Justice, concurring and assigning additional reasons.
The majority opinion convincingly establishes that the exclusion should be applied only to bodily injury which the insured subjectively intended or expected from his conduct, and not to bodily injury which merely resulted from an intentional act.[1] *615 The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation.
On this record the factfinder could have reasonably concluded the insured's statements (that he did not intend or expect such a serious injury to result from his conduct) were not inconsistent with the facts and circumstances surrounding the incident, particularly in the absence of contrary medical, physical or physiological evidence regarding the force and other factors involved in jaw fractures and the likelihood of such injury from the act in question. The insurer had the burden of proving the exclusion, and the factfinder's decision that the insurer failed to bear this burden is supported by the record.
NOTES
[1] See Annotation, Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured, 31 A.L.R. 4th 957 (1984 & Supp. 1989) for numerous cases addressing the clause considered herein. Recent Louisiana cases addressing this issue include Pique v. Saia, 450 So.2d 654 (La.1984), Kersh v. Heffner, 542 So.2d 1118 (La.App. 5th Cir.1989), Schexnider v. McGuill, 526 So.2d 513 (La.App. 3d Cir.1988), Johnson v. Hitchens, 518 So.2d 1154 (4th Cir. 1988), Barras v. Benoit, 509 So.2d 668 (La.App. 3d Cir.1987).
[2] In United Services Auto. Ass'n v. Elitzky, supra, the court held that the exclusionary clause at issue here is ambiguous as a matter of law and ruled that the relevant standard for understanding the clause is the "layman's expectations when he signs an insurance contract." Elitzky, 517 A.2d at 988. Accord, Rodriguez v. Williams, 107 Wash.2d 381, 729 P.2d 627, 629 (1986).
[3] "(T)he policy term, `expected or intended injury,' cannot be equated with `foreseeable injury.' " Alabama Farm Bureau Mut. Casualty Ins. Co. v. Dyer, 454 So.2d 921, 924 (Ala.1984).
[4] "General criminal intent is present whenever... in the ordinary course of human experience, (the actor) must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2). See also State v. Elzie, 343 So.2d 712, 714 (La.1977) ("(G)eneral intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire on his part to have accomplished such result.").
[5] In Strainer, an employee "jokingly" removed a filtration device from a co-employee's respirator during a safety check and squirted smoke into the respirator's air chamber. Unknown to the prankster, this smoke contained a dangerous chemical. Upon inhaling the smoke, the co-employee went into convulsions and was permanently and seriously injured.
[6] Mont.Code Ann. § 39-71-413 (1987).
[7] See, e.g., Butler v. Behaeghe, 37 Colo.App. 282, 548 P.2d 934 (Ct.App.) (1976). The rule adopted by the Butler court typifies the approach followed by several jurisdictions:

Where coverage is excluded if bodily injury is `intended or expected' by the insured, such exclusion is inapplicable if and only if the insured acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended.
Id. at 938.
The Butler approach has been aptly criticized by the New Hampshire Supreme Court:
This interpretation would broaden the exclusion, since it would not limit coverage by reference to the particular injury intended. The present policy is not open to such an interpretaion for the simple reason that the exclusion speaks of `bodily injury ... expected or intended by the insured,' not of bodily injury resulting from an act expected or intended by the insured to injure.
MacKinnon, supra, 471 A.2d at 1167.
[8] A hypothetical posed by the Pennsylvania Superior Court illustrates this point:

An insured angrily slaps someone in the face, intending only to sting the victim's cheek. But the person's head jumps back from the impact and hits a wall, causing neurological damage and sending the victim into a coma. The insured intentionally caused the victim harm and under the view that it does not matter what type of harm results, the insured would be denied insurance coverage. Yet, would any reasonable insured expect that in such circumstances he would be viewed as having intended that a coma would result? Such a conclusion is based on legal notions of intent and causation which have very little relevancy to a layman's expectations when he signs an insurance contract.
Elitzky, 517 A.2d at 988.
[9] See Elitzky, supra, note 8.
[10] The trial court's instructed the jury on intent as follows:

Injury may result from the intentional or negligent acts of a person....
An injury is intentional, that is, the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever may be the likelihood of that result happening from his conduct; or knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to the result.
Intent has reference to the consequences of an act rather than to the act itself....
(Emphasis added).
[1] Thus, when defendant struck plaintiff in the jaw in a momentary fit of anger under the circumstances of this case, coverage would not have been excluded if plaintiff had fallen, broken his neck, and been permanently paralized, because that bodily injury was not expected or intended from defendant's standpoint. But coverage would have been excluded if plaintiff had suffered bruising and pain for several days from the same act.