BOWES, Judge
dissenting in part.
I respectfully dissent from that portion of the majority opinion which found that the jury was not manifestly erroneous in concluding that Bo Maisano did not expect or intend the injuries sustained by plaintiff.
As noted by the majority, the policy of insurance at issue herein contains this exclusion of liability: “for bodily injury or property damage: (1) which is expected or intended by the insured.”
The majority court relies on Breland v. Schilling, 550 So.2d 609 (La.1989), in which the Louisiana Supreme Court interpreted an identical provision and stated that it is the insured’s subjective intention and expectation of the injuries resulting from his actions which determines the scope of coverage. The Breland court also noted that:
The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is ‘designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will ‘pay the piper’ for the damages.’ Trans-america Ins. Group v. Meere, 143 Ariz. 351, 694 P.2d 181, 186 (1984). Accord, United Servs. Auto. Ass’n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982 (1986).
In this connection I take cognizance of the fact that Bo Maisano testified on cross-examination as follows:
Q. And it was your plan to walk along that soft sand all the way back to South Bay.
A. No, we were veering down to the hard sand because it was too hard to walk.
Q. At that point you saw Scott and Dean Yount; isn’t that right?
A. Yes.
Q. You wanted to go get them anyhow, didn’t you?
A. Once I recognized who it was I wanted to get Scott.
Q. And that’s what you did, isn’t it? A. Yes.
Q. You went after them.
A. I started quickening my pace ahead of everyone else.
Q. By the time you got to Scott you were almost at a run; isn’t that correct?
A. Yeah, you could say that.
Q. You hit Scott from behind, didn’t you?
A. No, I took him down from behind. Q. You didn’t give him any warning, did you?
A. No.
*1389 Q. He didn’t know what was happening did he?
A. No.
Q. You beat him with your fists.
A. Yes.
Q. Both fists?
A. Yes.
Q. And then you kicked him, too; isn’t that correct?
A. Yes.
Q. How long did that whole process last, about two or three minutes?
A. I can’t recall the time.
Q. It could have been two or three minutes, right?
A. It wasn’t very long.
Q. At least a minute.
A. I would say so, but when I got to the point where I took him down I really don’t know what was happening. I was sort of freaked out in a frenzy, furious frenzy and I really don’t know what was happening at all.
Q. You knew you were hitting him.
A. Yeah, I knew I was hitting him. I didn’t know what — anything beyond that.
Q. Do you recall how many times did you hit him?
A. No.
Q. More than ten?
A. I would say — I don’t know. I could say ten, maybe. I don’t know.
Q. It could have even been 20. You just don’t know.
A. No, that’s correct.
Q. You kicked him a number of times, too. You don’t know how many times you kicked him.
A. That’s true. It wasn’t many, a couple of times.
Q. You injured your foot.
A. Yes, I did.
Q. Your foot became infected.
A. Yes.
Q. That was a result of your kicking Scott, isn’t that correct?
A. Yes.
Q. Scott was on all fours, wasn’t he?
A. Yes.
Q. He was trying to protect himself. He had his hands over his head like that (indicating).
A. I guess.
Q. He never threw a punch did he?
A. He didn’t have a chance.
Q. Do you remember the altercation ending?
A. Yes. I remember Billy pulling me off saying, “That’s enough. He’s had enough.”
Q. Billy said, “That’s enough.”
A. Yes.
Thus, defendant’s own testimony establishes that he intended to “get” plaintiff and that he punched plaintiff possibly twenty times and also kicked him at least twice (testimony of other witnesses states that there were many kicks). Certainly, defendant should have expected that his conduct would cause the serious injuries sustained by Scott Yount.
For my esteemed brothers of the majority to conclude that Bo Maisano neither intended nor expected serious injury because he had been drinking and was in a “furious frenzy” circumvents, in my view, the purpose of the intentional injury exclusion and allows Maisano to commit these wrongful acts with the knowledge that his liability insurer will be forced to pay for the deliberate mayhem that he inflicted on Scott.
In my opinion, this is not a case of one or two thoughtless (but powerful) blows inflicting much damage as was the case in Breland,[1] Keathley[2] and Baugh[3] where it was held that the insured did not “intend nor expect” the damages that resulted. This is a case of a long, deliberate and intentional beating, resulting from anger and intention that was built up within over two previous earlier incidents and (½ hour), with the hope and expectation of inflicting *1390 severe damage on another human being as revenge. Accordingly, I cannot subscribe to the absolution of Bo’s liability by this “I didn’t know what I was doing” defense. To do so, in my opinion, requires a very liberal and strained interpretation of the verbiage of the exclusion involved here and pushes the already hard pressed liability insurers of this state ever closer to the exit door.
Accordingly, I respectfully dissent and I would hold that verdict of the jury is manifestly erroneous and clearly wrong and that the exclusion under discussion does apply in this case. Hence, the insurer would have no coverage and no liability for Bo’s actions.

. supra.

. Keathley v. State Farm Fire & Cas. Ins., 594 So.2d 963 (La.App. 3 Cir.1992).

.Baugh v. Redmond, 565 So.2d 953 (La.App. 2 Cir.1990).