GAUDIN, Judge.
This is an appeal by Allstate Insurance Company from an April 30, 1997 judgment finding it jointly responsible along with Michael M. Floyd, Sr. for injuries sustained by two persons — Floyd’s former wife Paige and William Orazio, Jr. — as a result of an altercation apparently caused by Floyd. Allstate had issued a homeowner’s liability policy to Floyd.
Mrs. Floyd and Orazio were at her apartment on Delaware Street in Kenner when Floyd arrived and tried to force his way in.
The trial judge in the 24th Judicial District Court found that while Floyd “intended to go in there,” he did not intend to injure either Mrs. Floyd or Orazio. Nonetheless, Floyd was cast in judgment along with Allstate.
A clause in the Allstate policy excludes coverage for damages resulting from an act of the insured intending or expecting to cause bodily injury. The facts and circumstances of this incident indicate that Floyd’s actions fall under this exclusion; consequently, that part of the judgment finding Allstate in solido negligent along with Floyd is set aside.
Mrs. Floyd testified that on the evening of November 29, 1992, she was in her apartment with Orazio, her fiance, her four-year-old son Michael, Jr. and her mother Mrs. Lynell Boudro. They had been Christmas shopping, and that she and Orazio were going to unload the packages from the car. Mrs. Floyd testified that the door was not shut all the way, and that she saw Floyd trying to come in. Mrs. Floyd states that Floyd was threatening to kill both her and Orazio; therefore, she and Orazio pushed on the door until they Ushut and bolted it. Mrs. Floyd stated that she was not expecting Floyd because it was not his turn to have custody of their minor child Michael. She stated that after they had shut the door, Floyd started to kick it.
Mrs. Floyd went upstairs. She could see Floyd putting his arm through a hole he had kicked in the door and trying to unlock the bolt. Mrs. Floyd stated that she injured the right side of her arm, her hand and her shoulder.
Orazio testified that he was in Mrs. Floyd’s apartment when he saw Mrs. Floyd being pushed back by the door. When Orazio went to her aid, she had half of the door shut and Floyd was shoving on it from the outside. Orazio and Mrs. Floyd managed to shut the door and bolt it. Orazio stated that after the *1121 door was shut, Floyd started to kick holes in it. Orazio said that Floyd put his arm through a hole and tried to unlock the lock. Orazio testified that they were wrestling over the lock when Floyd grabbed his (Orazio’s) arm and pulled it through the hole in the door up to the biceps. Orazio said that Floyd took his hand and jammed it up against the wooden part of the door and that Floyd pulled his leg through the hole.
Floyd testified that he never wanted to hurt Mrs. Floyd when he went to her apartment. He said that he went there to pick up his son. Floyd said that the door was partially opened so he called out to see if anyone was home and opened the door to stick his head in when the door slammed on his arm. He testified that he could not get his shoulder or his arm out of the door and that he did everything that he could do to free himself. He said that the panel of the door was knocked out in the struggle. Floyd said that he did not kick the door and that he did not touch Orazio.
Three other witness testified regarding this incident, including Mrs. RFloyd’s next door neighbor, Troy Oddo. Oddo testified that he saw Floyd trying to “get” Orazio through the door, and heard Floyd say that he (Floyd) would kill him (Orazio). Oddo saw Floyd kick the apartment door and knock the panel out. Oddo stated that Floyd was pulling Orazio’s arm through the hole and that Floyd was trying to unlock the door and enter the apartment. The arrival of a police car ended the altercation.
The trial judge awarded Mrs. Floyd $3,944.00 for her injuries and Orazio $5,679.58 for his, with Floyd and Allstate jointly responsible, Floyd because of his actions and Allstate because of the homeowner’s policy covering Floyd. In placing Floyd in judgment and in finding that he intended to enter the apartment, the trial judge evidently determined that the testimony of Mrs. Floyd, Orazio and Oddo was more credible than Floyd’s unsupported version of the incident. It was therefore erroneous and inconsistent for the trial judge to then decide that the injuries inflicted were neither intended nor expected.
There had been prior instances of trouble between Floyd and his former wife. Floyd may not have intended the specific injuries suffered by Mrs. Floyd and Orazio, but in trying to forcefully enter the apartment by pushing against Mrs. Floyd and by kicking in the door and grabbing hold of Orazio, he caused injuries which were likely to (and which did) result.
The purpose of intentional acts exclusions is to avoid giving a defendant a license to commit whatever wanton and malicious acts he wishes. They are designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will “pay the piper” for the damages. See Breland v. Schilling, 550 So.2d 609, 610 (La.1989); also, Cavalier v. Suberville, 592 So.2d 506 (La.App. 5 Cir.1991), writ denied at 594 So.2d 1318 (La.1992).
We are aware of the holding and guidelines expressed in Breland v. Schilling, 550 So.2d 609 (La.1989), wherein a minor injury was intended but a much more severe injury resulted. The plaintiffs in the instant case, Mrs. Floyd and Orazio, sustained only minor injuries plausibly expected from Floyd’s intrusion; thus, Breland can be distinguished.
We reverse the April 30, 1997 judgment only insofar as Allstate is concerned. Judgment is hereby rendered in Allstate’s favor and against plaintiff Mrs. Floyd and Orazio. All other provisions of the decree remain as handed down.
JUDGMENT REVERSED IN PART.