746 So.2d 787 (1999)
Donald G. CLASSERT
v.
John BUTLER, et al.
No. 98 CA 1991.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
*788 C. Jerome D'Aquila, New Roads, LA, for Plaintiff-Appellee Donald G. Classert.
William H. Justice, Baton Rouge, LA, for Defendant-Appellant State Farm Fire & Casualty Company.
W. Ransom Pipes, Baton Rouge, LA, for Defendant-Appellant Ronn Rodney.
BEFORE: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
PETTIGREW, J.
In this case, defendants appeal a judgment by the trial court finding in favor of the plaintiff and awarding damages for injuries sustained by plaintiff in a stabbing incident. For the reasons that follow, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
On October 20, 1990, plaintiff, Donald G. Classert, was working at the Woodmen of the World fair in New Roads, Louisiana. He was attempting to get some rowdy fair patrons to leave the premises when an altercation began involving his son. According to Mr. Classert, his son was on the ground with a group of "black fellows" beating on him. Mr. Classert "jumped in the pile" in order to help protect his son. Approximately 10 to 15 minutes later, when Mr. Classert was showing a security officer the individuals who were involved in the first altercation, he was rushed by "a whole bunch of guys" who began beating on him. Mr. Classert sustained "multiple cuts, bruises, contusions and a stab wound to the abdomen" during this second incident. Mr. Classert sought treatment at the New Roads Hospital and was later transferred by ambulance to a hospital in Baton Rouge, Louisiana.
Approximately one year later, Mr. Classert filed the instant suit for damages naming as defendants Joseph E. Butler, Byron Johnson, Ronn Rodney (Rodney), Ethel Rayford, the City of New Roads, Pointe Coupee Parish Police Jury, and State Farm Fire & Casualty Company (State Farm), in its capacity as Rodney's homeowner's insurer.[1]
Rodney and State Farm each filed a motion for summary judgment. Thereafter, they filed a joint motion for summary judgment. All of the motions were denied by the trial court, and the matter proceeded to a trial on the merits on June 5, 1997. At the beginning of the trial, the parties stipulated that Mr. Classert sustained a stab wound to the abdomen and that if liability were proven, damages would total $17,500.00, plus interest and costs. They also agreed to leave the record open for the taking of the deposition of Louis Seither, a friend of Mr. Classert's who witnessed the altercation in question. Judgment was rendered by the trial court on February 4, 1998, finding in favor of Mr. Classert and against Rodney and State Farm, in solido, for the sum of $17,500.00, plus interest and costs. However, the trial court did not issue either written or oral reasons for judgment.
Rodney has appealed the trial court's judgment, assigning the following specifications of error:
1. The trial court clearly erred, as a matter of fact, in finding that defendant, Ronn Rodney, inflicted a stab wound to the plaintiff.

*789 2. The trial court erred, as a matter of law, in finding that plaintiff carried its burden of proof that defendant, Ronn Rodney, inflicted a stab wound upon the plaintiff.
In a separate appeal of the trial court's judgment, State Farm asserts the following assignments of error:
1. The trial court committed manifest error in failing to find that defendant, Ronn Rodney, committed an "intentional act" within the meaning of the subject policy, which intentional acts are excluded from coverage under the policy.
2. The trial court committed manifest error in failing to find that defendant, Ronn Rodney, committed a willful and malicious act within the meaning of the subject policy, which willful and malicious acts are excluded from coverage under the policy.
3. The trial court committed manifest error in failing to find that a stabbing and/or "attack" is not an "occurrence" which is defined in the policy as an "accident." Coverage is only provided for bodily injury which is the result of an "occurrence." Because a knifing is not an occurrence, there is no coverage.

I. APPEAL BY RONN RODNEY
The issues raised by Rodney on appeal concern whether Mr. Classert satisfied his burden of proving negligence by a preponderance of the evidence. Negligence is conduct that falls below the standard established by law for the protection of others against unreasonable risk of harm. It is the breach of a duty, statutory or non-statutory, owed to another to protect that person from the particular harm that ensued. Callais v. Allstate Insurance Co., 334 So.2d 692, 700 (La.1975) (on rehearing). Negligence is not presumed. The burden of proving negligence by a preponderance of the evidence rests upon the party alleging it. Starks v. Kelly, 435 So.2d 552, 556 (La.App. 1 Cir.1983). This court has previously recognized the well-settled principle that once the applicable standards of care are established, negligence is a question of fact to be determined by the judge or jury. Negligence must be determined on a case by case basis according to the particular facts and circumstances therein. Schoonmaker v. Capital Towing Company, 512 So.2d 480, 484 (La.App. 1 Cir.), writ denied, 514 So.2d 458 (1987).
The Louisiana Supreme Court has developed a two-part test for reviewing factual issues on appeal. As an appellate court, we cannot set aside the trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
The trial court's factual findings in the present case are based on credibility determinations and must be afforded great deference. After reviewing the record in its entirety, we conclude that the trial court was not manifestly erroneous in finding that Mr. Classert had satisfied his burden of proof.
Among the witnesses who testified at the trial of this matter was Detective John R. Jarreau, who was working for the New Roads Police Department at the time of the incident in question. He investigated *790 the stabbing incident and ultimately arrested Rodney and Joseph Butler in connection with the battery of Mr. Classert. When asked how many people were involved in the altercation with Mr. Classert, Detective Jarreau indicated that "[i]t could have been as many as ten to twelve people."
Detective Jarreau indicated that he questioned Rodney Smith (Smith) and Byron Johnson (Johnson) regarding Rodney's involvement in the stabbing of Mr. Classert. The report prepared by Detective Jarreau in connection with his investigation was introduced into evidence and forms a part of the record on appeal. According to the report, when initially questioned by Detective Jarreau, Smith stated that he had no knowledge of the incident. After being arrested and charged with the aggravated battery of Pedro Leonard, the victim of a separate incident that also occurred at the Woodmen of the World fair, Smith gave another statement wherein he advised Detective Jarreau that he "saw Ronn Rodney stab a white man in the stomach with a knife." Smith also named seven other subjects as being involved in the incident with Mr. Classert. When asked why he did not tell of the incident when he was initially questioned, Smith indicated that he had been threatened by one of the subjects and he further stated, "you just do not tell."
Detective Jarreau's report further reveals that Johnson, who gave two different statements regarding the incident, also implicated Rodney in the stabbing of Mr. Classert. In his first statement, Johnson indicated that "it was like a riot." He stated that there was a "white guy on the ground and it looked like everybody was taking a turn kicking him." He also told Detective Jarreau that he saw Rodney with a knife and recognized approximately six other subjects who were involved in the altercation. In a later statement, Johnson advised that when the fight broke out, Rodney ran through the crowd and stabbed one of the white guys in the stomach. Johnson further explained how after the fight, Rodney showed them the knife with blood on it and bragged about the stabbing. Johnson, like Smith, also indicated that fear of retaliation prevented him from giving the entire statement initially. According to Detective Jarreau, both Smith and Johnson were charged in connection with the incident involving Mr. Classert.
Mr. Classert testified that he was unable to identify the person who stabbed him. When asked if he saw Rodney at the fair, Mr. Classert replied, "I believe so, but I couldn't swear to it positively." Regarding the incident in question, Mr. Classert indicated that "a whole bunch of guys just ran up behind [him], and knocked [him] on the ground" and started beating on him. Mr. Classert stated that there were at least five people who jumped on him, but that he did not know "how many more piled in." He was able to positively identify Joseph Butler as the subject who was standing over him and kicking him. Mr. Classert stated that he did not realize he had been stabbed until a friend of his son's advised him that he was bleeding from the stomach.
During his testimony at trial, Rodney admitted that he attended the fair on October 20, 1990, with two of his friends, Chad Joseph and Brandon Jones. However, he denied being involved in any physical altercation that occurred that night. Rodney testified that he does not own a knife and did not have a knife with him at the fair on the night in question. Rodney, who stated that he was about 5'4", indicated that he was about 20-30 feet away from the fight involving Mr. Classert, but was unable to see anybody hitting or kicking Mr. Classert because of the "whole crowd" in front of him. When asked about prior convictions, Rodney admitted to having been convicted of "simple possession of cocaine, negligent injury [sic], forbidden on premises and disturbing the peace."
The only other witness to testify in this matter was Louis Seither, whose deposition was presented to the trial court for its review pursuant to the stipulation by the parties prior to trial. Mr. Seither, a friend *791 of Mr. Classert's, attended the fair on the day in question and observed the incident involving Mr. Classert. According to Mr. Seither, Mr. Classert was "getting the heck knocked out of him." Mr. Seither indicated that during the altercation, he was knocked down while trying to protect his wife from being hit with a beer bottle. He was approximately 10-12 feet away from Mr. Classert at the time. Mr. Seither observed Mr. Classert lying on the ground, in what he described as a "fetus position," while a short black male was punching him in the stomach and a taller black male was kicking him in the back. He stated that the whole incident lasted about 30 to 40 seconds. Mr. Seither testified that although he never saw a knife, he did in fact observe a puncture wound to Mr. Classert's abdomen after the altercation ended. According to Mr. Seither, he never saw anyone else punching Mr. Classert in the stomach.
There are some discrepancies in Mr. Seither's trial deposition, which was taken on July 22, 1997, when compared to the statement that he originally gave on April 21, 1994, and his first deposition, which was taken on July 13, 1994. In his April 21, 1994 statement, Mr. Seither indicated that there were about 15 or 20 people involved in the altercation with Mr. Classert. He also stated that he could not identify any of the individuals who were involved in the fight.
During his first deposition on July 13, 1994, Mr. Seither indicated that there were five or six people on Mr. Classert during the incident. When asked if he could identify any of the individuals, he responded, "Just that one was tall and one was a little short."
At the time of his deposition on July 22, 1997, Mr. Seither was shown two photographs that had been introduced at the trial of this matter. He correctly identified the subject in P-1 as the short black male (Rodney) who was punching Mr. Classert in the stomach and the subject in P-2 as the taller black male (Joseph Butler) who was kicking Mr. Classert. He indicated that these were the only two individuals that he saw actually hitting Mr. Classert. When asked to explain the statement from his first deposition where he indicated that there were five or six people on Mr. Classert at the time, Mr. Seither testified that there were other people standing around Mr. Classert during the altercation.
According to Mr. Seither, after the short black male got up from punching Mr. Classert, he said, "I just stuck me a white man." Mr. Seither explained that he remembered this statement at the time of his first deposition in 1994, but did not say anything to anyone because the attorneys made him "look like a fool" while he was giving that deposition. Mr. Seither indicated that he was 100% sure and had no doubt in his mind that Rodney was the black male who had punched Mr. Classert in the stomach and made the above statement.
We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the trial court's finding that Rodney was in fact the person who stabbed Mr. Classert in the abdomen. The testimony was conflicting, and apparently, after hearing all of the evidence, the trial judge made credibility determinations that must be afforded "great deference." In accordance with the general principle previously cited, we conclude that the trial court's credibility determinations are neither manifestly erroneous nor clearly wrong. Therefore, the finding by the trial court that Rodney is liable to Mr. Classert is affirmed. Rodney's argument on appeal is meritless.

II. APPEAL BY STATE FARM
Having determined that the trial court was correct in finding that Rodney was the person responsible for the stabbing of Mr. Classert, we must now consider the issues presented by State Farm in its appeal of the trial court's judgment. In its first assignment of error, State Farm argues that in stabbing Mr. Classert, its insured committed an intentional act within the meaning of the policy and coverage *792 is therefore precluded. State Farm contends that the "judge's finding of liability against both State Farm and Mr. Rodney is conflicting on its face." State Farm further asserts that "[i]f Mr. Rodney stabbed the plaintiff, then State Farm cannot be `solidarily liable' with Mr. Rodney since its policy excludes coverage for such incidents." We agree with State Farm in this respect.
As previously indicated, State Farm was sued in its capacity as the homeowner's insurer of Rodney. The policy in question was introduced into evidence and forms part of the record on appeal. The policy provides coverage for personal liability when a claim is "brought against an insured for damages because of bodily injury." Further, the policy affords medical payments for "the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury." However, the policy contains certain exclusions to this coverage. According to the express language of the policy, there is no coverage for bodily injury "which is either expected or intended by an insured," or for bodily injury "to any person or property which is the result of willful and malicious acts of an insured."
The Louisiana Supreme Court has recognized that the purpose of this "intentional acts exclusion" is to "prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." Breland v. Schilling, 550 So.2d 609, 610 (La.1989), quoting Transamerica Ins. Group v. Meere, 143 Ariz. 351, 694 P.2d 181, 186 (1984). However, the court has also recognized that a policy provision excluding coverage for bodily injury expected or intended by the insured could be interpreted to bar recovery for either intentional and negligent injuries or only intentional injuries and is, therefore, ambiguous. Pique v. Saia, 450 So.2d 654, 655 (La.1984). It is well settled that any ambiguity in an exclusion should be narrowly construed in favor of coverage. Great American Insurance Company v. Gaspard, 608 So.2d 981, 984 (La.1992). Further, the insurer has the burden of proving that a loss comes within a policy exclusion. Louisiana Maintenance Services, Inc. v. Certain Underwriters At Lloyd's of London, 616 So.2d 1250, 1252 (La.1993).
In Breland, the court rejected the reasoning that an insured intends, as a matter of law, all injuries that flow from an intentional act. Breland, 550 So.2d at 613. Rather, in determining whether an act is intentional, the court will consider the insured's subjective intent, as well as his reasonable expectations as to the scope of his insurance coverage. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur. Great American Insurance Company, 608 So.2d at 985. Regarding an insured's reasonable expectation as to the scope of his insurance coverage, the Breland court concluded:
We hold, therefore, that when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.
Breland, 550 So.2d at 614.
In order for coverage to be barred under State Farm's policy, Ronn Rodney, the insured, must have desired the injury that he caused or believed that the injury Mr. Classert sustained was substantially certain to occur. Although Rodney testified that he was not involved in the altercation with Mr. Classert, was have already determined that the evidence was sufficient to support a finding that Rodney was responsible for the stabbing of Mr. Classert. Thus, we must look to the facts and circumstances surrounding this incident to *793 determine whether Rodney desired the results of his actions or believed that the results were substantially certain to occur.
A review of the evidence presented to the trial court in this matter reveals that Mr. Classert was the victim of a vicious attack by a group of black males who rushed him, knocked him to the ground, and proceeded to punch and kick him as he lay on the ground in a "fetus position" unable to defend himself. According to the testimony of Mr. Seither, the only eyewitness to the incident who testified, he saw Rodney repeatedly punch Mr. Classert in the stomach area, as another black male kicked Mr. Classert in the back. Further, after the altercation ended, Mr. Seither heard Rodney saying, "I just stuck me a white man."
In addition to the eyewitness testimony of Mr. Seither, there were statements by Smith and Johnson, two other subjects who were also charged in connection with this incident. Detective Jarreau testified that both Smith and Johnson identified Rodney as the person who stabbed Mr. Classert. Moreover, Johnson described the incident as a "riot" where everyone was taking turns kicking the white guy who was on the ground. Johnson also reported that after the incident, Rodney showed the bloody knife to them and bragged about the stabbing.
Based upon the overwhelming evidence in the record regarding the brutal nature of this attack, we can only conclude that an adult who engages in this type of physical altercation while armed with a knife either actively desires or knows to a substantial certainty that his actions will cause harm. Further, there can be no reasonable expectation by an insured who engages in this behavior that his insurer will provide coverage for the resulting harm. Thus, the policy exclusion at issue that precludes coverage for bodily injury "which is either expected or intended by an insured," bars recovery against State Farm. State Farm's first assignment of error has merit. Because we find that the "intentional acts exclusion" is applicable, we do not reach the other issues raised by State Farm regarding its policy. The trial court's judgment finding State Farm solidarily liable with Rodney is therefore reversed, and Mr. Classert's claims against State Farm are dismissed.

DECREE
For the above and foregoing reasons, the trial court's finding of liability against Ronn Rodney is affirmed. However, the trial court's finding of solidary liability as to State Farm is reversed, and all claims against State Farm are dismissed. Costs associated with this appeal are assessed against defendant/appellant, Ronn Rodney.
AFFIRMED IN PART. REVERSED IN PART.
NOTES
[1] Rodney and State Farm are the only defendants who participated in the trial of this matter and who are parties to this appeal. Further, Mr. Classert's suit was consolidated with another case, "Arlene F. Louis, et al. v. False River Park and Recreation Commission, et al.," Docket No. 26,594, involving a different incident that also occurred at the Woodmen of the World fair in New Roads, Louisiana, on October 20, 1990. The consolidated suit was dismissed with prejudice by the plaintiffs prior to Mr. Classert's suit proceeding to trial.