| gPARRO, J.
Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau) appeals a judgment in favor of its insureds, Jack W. and Dot G. Melder, finding that fire damage to a shed and equipment were covered under their homeowners policy and awarding them a total of $50,000 for property damage, penalties, and attorney fees. We reverse and render.
FACTUAL AND PROCEDURAL BACKGROUND
On October 19, 1999, a metal shed on the Melders’ residential property caught *514 fire; the fire destroyed the shed and its contents, including a 1972 John Deere tractor and numerous tools, equipment, and supplies. The Melders submitted a claim for the damage to Farm Bureau, seeking coverage under their homeowners insurance policy. Farm Bureau denied their claim based on the “business use exclusion” in the policy, and the Melders sued, stipulating that their damages did not exceed $50,000. After a bench trial, the court ruled in favor of the Melders, awarding $9,000 for the loss of the shed and $31,049 for the tools and equipment. The judgment also awarded 10% penalties in the amount of $4,004.90 and attorney fees in the amount of $5,946.10 for Farm Bureau’s arbitrary and capricious denial of the claim. This appeal followed.
Since 1970, the Melders have lived in the country. Mr. Melder is a retired school principal who, both before and after his retirement in 1987, kept a small herd of ten to fifteen cattle on his property. He also baled hay for his own use and for sale to others. Among many other uses, some of which were off-premises, the John Deere tractor that was destroyed in the fire was used in the hay baling activity. Although it was generally stored in the hay barn, that barn was full on the day of the fire, so the tractor was parked in the shed. The Melders had a farm insurance policy with Farm Bureau that provided liability coverage for their farming operations. At least since 1988, the Melders had filed income tax returns with a “Schedule F” showing they were engaged in farming, and had shown income and expenses attributable to that activity. They had also depreciated the cost of the tractor, Mr. Melder’s pickup truck, and various other |sequipment as business expenses. Their claimed business losses for farming during those years exceeded $130,000, and were used as deductions against income on their tax returns. Due to health problems, Mr. Melder had sold all the cattle several months before the fire occurred.
The Farm Bureau homeowners policy defines “business” as “trade, profession or occupation including farming.” (emphasis added). The “insured location” is defined as the “residence premises,” which is also a defined term meaning “the one family dwelling, other structures, and grounds.” The coverage provisions stated that “other structures on the residence premises set apart from the dwelling by clear space” were covered, except for “other structures used in whole or in part for business” (emphasis added) and “farm barns or outbuildings used, intended for use as, or formerly used as farm barns or outbuildings.” The policy also stated that motor vehicles were not covered, except for motor vehicles not subject to motor vehicle registration “used exclusively to service an insured’s residence.” After the fire, Farm Bureau’s adjuster discussed the use of the shed and equipment with Mr. Melder. Based on the information he provided, Farm Bureau denied the claim, because the shed was used to store equipment and machines used to maintain the farm, the tractor was used in the farming operation for hay baling, and most of the other items and tools damaged in the fire constituted business property.
In oral reasons for judgment, the trial court concluded:
The Court is of the opinion that plaintiffs have clearly shown that the business activities exclusion of the homeowners policy of Farm Bureau is not applicable in this case. ... At the time of the fire this Court finds that there was not a business activity in progress. There was no hay or grain stored in the shop, and from the testimony of plaintiff, he used the equipment to cut the hay or *515 grass on his own property and that of some of his neighbors for which he did not charge. Moreover, the Court was very impressed with the forthrightness and credibility of Mr. Melder. He testified straightforwardly without evasion, and the Court fully believed his testimony.
In this appeal, Farm Bureau claims the trial court erred in finding the Melders were not engaged in a business at the time of the fire, in finding the business exclusion did not apply, in awarding damages for the tractor in spite of a policy exclusion for vehicles not |4used exclusively on the residence property, in awarding penalties and attorney fees, in relying on Mr. Meld-er’s testimony that he was not engaged in business when his income tax returns claimed otherwise, and in finding the policy covered everything on their residential property except the barn.
DISCUSSION
An insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, 1169. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. See LSA-C.C. art.2046; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 197. Further, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. And finally, regarding such limitations, it is the insurer’s burden to show that a loss falls within a policy exclusion. Classert v. Butler, 98-1991 (La.App. 1st Cir.11/5/99), 746 So.2d 787, 792.
Most of the cases discussing “business” exceptions to coverage under homeowners insurance policies deal with “business pursuits” exceptions to liability coverage, under which liability coverage does not apply to injuries or damages arising out of any “business pursuit” of the insured or while the insured is engaged in “business activity.” See, e.g., Edwards v. Trahan, 168 So.2d 365 (La.App. 1964); Roberts v. Hartford Accident & Indem. Co., 394 So.2d 696 (La.App. 3rd Cir.1981); LeBlanc v. Broussard, 396 So.2d 535 (La.App. 3rd Cir.1981); Blue Ridge Ins. Co. v. Neuman, 453 So.2d 554 (La.1984); MVG, ex rel. CEG v. Lucas, 590 So.2d 1322 (La.App. 1st Cir.1991); Bowen v. Skillman, 622 So.2d 1200 (La.App. 2nd Cir.1993); Jackson v. Frisard, 96-0547 (La.App. 1st Cir.12/20/96), 685 So.2d 622, units denied, 97-0193, 689 So.2d 1386 and 97-0201 (La.3/14/97), 689 So.2d 1387; Elorza v. Massey, 00-313 (La.App. 5th Cir.3/14/01), 783 So.2d 453; Richard v. Milazzo, 01-2233 (La.App. 1st Cir.11/8/02), 831 So.2d 1055. These cases do not provide much guidance for the situation before us, |Rwhich calls for a determination of whether a damaged building was “used in whole or in part for business.”
Our research has revealed only one case dealing with the “business use” exception to the property damage coverage under a homeowners insurance policy. See Fontenot v. Louisiana Farm Bur. Cas. Ins. Co., 517 So.2d 1044 (La.App. 3rd Cir.1987). Like this case, the Fontenot case involved damage to a barn and a pump house near the insured’s home, and one of the reasons the insurer denied coverage was the same “business use” exclusion that is at issue in the matter before us. In that case, the insured admitted some of the items stored in the barn were formerly used in a farming operation, but testified that he had not been involved in any farming operations since before the damage occurred. Nor was it shown that any farming operations in the past were done as a business pur *516 suit. Given this failure to prove the barn’s use “in whole or in part for business purposes,” the court concluded the exception did not apply.
The facts in the matter before us are quite different. As the trial court noted, Mr. Melder was very candid about being engaged in farming and clearly stated the tractor, tools, and equipment in the shed had a dual purpose and were used for the farming operation, as well as for maintenance of the residence premises. He said he had upgraded his herd with registered “Beefmaster” cattle in an attempt to profit on their sales and also baled hay, some of which he used on his own farm and some of which he sold. In fact, the reason the John Deere tractor was in the shed was because he had just finished baling some of his fields and had parked the loaded trailer in the hay barn, leaving no room for the tractor there. Since he had sold his cattle several months earlier, the only possible purpose for that hay was to sell it. In connection with the farming operation, he and Mrs. Melder had filed a “Schedule F” with their tax return every year and itemized the farm expenses in order to take deductions against income.[1] |fiMr. Melder stated simply, “Agriculture has always been a good write-off and this is one of the reason[s] I have my cows .... ” Although at trial he and Mrs. Meld-er characterized the farming operation as a hobby, rather than a business, they undoubtedly treated it as a business for tax purposes for almost thirty years.[2]
Perhaps more importantly, a fact that was not mentioned by the trial court and was not emphasized in the briefs to this court is that the policy itself defines “business” as any “trade, profession or occupation including farming.” These policy provisions are not ambiguous, nor was the evidence in this case. Mr. Melder never disputed that he was engaged in farming— he simply disputed that his farming was a business, rather than a hobby. Based on his own admissions and on the record as a whole, we are forced to conclude that the trial court was clearly wrong in finding that Mr. Melder’s shed was not “used in whole or in part for business.”[3] Accordingly, the judgment of the trial court must be reversed, and judgment rendered in favor of Farm Bureau.[4]
CONCLUSION
The judgment of September 2, 2003, is reversed, and the Melders’ claims against Farm Bureau are dismissed. Each party is to bear its own appeal costs.
REVERSED AND RENDERED.
KUHN and McCLENDON, JJ., dissent and assign reasons.

. Mr. Melder also said none of his tax preparers had ever told him there was anything illegal about this — and indeed, there was not. The Melders had a farming operation and were free to itemize and deduct the business expenses, "write-off" the losses, and depreciate the tools and equipment used in the business, as long as that was done in accordance with IRS regulations. What they were not free to do is to call the farming operation a business when it was a convenient tax shelter and call it a hobby when claiming damages against their insurer.

. They brought their first small herd to their rural home in about 1971.

. Mr. Melders testimony about the sale of the smaller, square hay bales was directly contrary to the trial court's conclusion that he used the tractor "to cut the hay or grass on his own property and that of some of his neighbors for which he did not charge.” (emphasis added). He did charge for selling the hay bales and he showed the income and expenses attributable to that portion of the farming operation on the Schedule F forms filed with the tax returns.

. Having reached this conclusion, there is no need to address any of the remaining assignments of error.