WHIPPLE, C.J.
*1050 Plaintiffs, Curtis Washington, Jr. and Almallica Allen, appeal a judgment of the trial court granting summary judgment in favor of defendant, Louisiana Farm Bureau Mutual Insurance Company ("Farm Bureau") and dismissing with prejudice plaintiffs' claims against this defendant. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
This matter arises from an accident, which occurred on I-10 westbound on December 13, 2015, when the car the plaintiffs were traveling in struck a cow allegedly owned by defendant, Chris W. Guillotte ("Mr. Guillotte"). The plaintiffs filed the instant suit, seeking to recover from Mr. Guillotte and the homeowner's insurance policy issued to him and his wife, Amy Guillotte, by Farm Bureau.[1]
Farm Bureau denied coverage for the accident based upon a policy provision, which provides, in pertinent part, as follows: "Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage ... b. arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured."[2] However, the policy also provides that coverage applies "to a person off the insured location, if the bodily injury ... is caused by an animal owned by or in the care of an insured ." Subsequent to denying coverage, on August 2, 2017, Farm Bureau filed a motion for summary judgment, seeking dismissal of plaintiffs' claims and contending no coverage was provided under the homeowner's policy at issue. On October 20, 2017, a hearing was held on the motion for summary judgment. In support of the motion, Mr. Guillotte's deposition testimony was submitted, which set forth, in pertinent part, the following facts.
Mr. Guillotte has had various animals on his property since approximately 2007. Over the years, he has owned goats, turkeys, ducks, and chickens, but did not own cattle until approximately 2010. Although Mr. Guillotte owned various animals, he generally only sold the cows.[3]
Mr. Guillotte initially decided to begin raising cattle because the upkeep of the farm was expensive. Accordingly, based on the suggestion of a co-worker, Mr. Guillotte purchased a few cattle and began claiming his farm expenses as a deduction on his federal taxes. Mr. Guillotte believed that "if you go and claim the - the animals [as a deduction on your federal taxes] as a farm, you have to show some kind of income." Thus, he used cattle sales to show this income. From the time Mr. Guillotte began keeping cows, until the accident in *1051 2015, he estimated he had bought and sold a maximum of 25 cows. Mr. Guillotte only kept a few cows at a time because he "didn't want to have to maintain so many cows. [He] just wanted them for - for the farm as a write-off, so [he] was just keeping them for - keeping the numbers down."
The cows and donkeys owned by Mr. Guillotte were kept on property neighboring his property.[4] This property is pastureland of approximately 20 to 22 acres that is not owned by Mr. Guillotte, but the owner of the pastureland allowed him to keep his animals on the land as long as he cut the grass and maintained the fencing. Mr. Guillotte only maintained approximately six to seven acres of the pastureland for the cattle to graze upon. Mr. Guillotte did not consistently have cows on the pastureland, but he eventually opted to keep cows on the pastureland so that the upkeep of the land would be more manageable.
Mr. Guillotte testified that his family's traditional farm animals were like pets to them.[5] Further, Mr. Guillotte has no knowledge regarding breeds of cattle, the method by which profit is made from cattle, or how the price for cattle is set.[6] Mr. Guillotte also does not know how to successfully breed cattle.[7] Additionally, Mr. Guillotte did not number his cows or register them with the state; he only recognized them by their physical markings. When Mr. Guillotte first began keeping cattle, he admittedly did not know how to properly feed them.
At the time of the accident, Mr. Guillotte had five cows, which he had purchased at auction in June 2015. Mr. Guillotte testified that one of these cows, a pregnant heifer, escaped confinement shortly after he placed it in the pasture. A man with pastureland in the area, Mr. Culotta, subsequently advised Mr. Guillotte that he believed the missing cow was in his pasture with his herd. The cow remained on Mr. Culotta's property until December 2015. At that time, Mr. Culotta told Mr. Guillotte that he returned the cow to Mr. Guillotte's pasture. However, Mr. Guillotte did not personally see the cow returned to his pasture. In fact, he did not see the cow *1052 again after the day of the action. The plaintiffs contend this is the cow involved in their accident.
In his answers to interrogatories and in his deposition testimony, Mr. Guillotte affirmatively stated that on December 13, 2015, the date of the accident, he was not raising livestock for profit. Further, he never intended to actually make a profit from his farming activities, and he has never "broken even" with the farming operation. Instead, the "farming activities" he described always resulted in a loss. However, Mr. Guillotte conceded that he had represented to the federal government on his taxes that he was conducting a farming business for purposes of obtaining the tax deduction. Every year from 2010 through 2016, Mr. Guillotte claimed only losses, never a profit, associated with his "Beef Cattle Ranching and Farming" activities on his federal taxes.[8]
By contrast, Mr. Guillotte testified that his primary source of income has been his employment as an operator at the Valero Refinery, where he has been employed since April 1, 2001. Mr. Guillotte works at least 40 hours per week at the refinery and, by comparison, only spends approximately five to ten hours per year maintaining his cattle.
Other evidence presented to the trial court was the affidavit of Dr. Timothy Page,[9] who was retained by Mr. Guillotte and opined regarding whether Mr. Guillotte's farming operations could be considered "profit making activity" based upon the number of cows Mr. Guillotte kept and the amount of pastureland he had. Dr. Page opined that, at best, a cattle operation such as Mr. Guillotte's would be classified as a part-time hobby, family entertainment, or a 4-H project. He further opined that a farmer with herd of less than 20 to 50 cattle and 40 to 100 acres of pasture "would be unable to conduct any type of profit making beef production activity."
In granting summary judgment, the trial court relied upon the fact that Mr. Guillotte had claimed losses on his federal taxes as a farmer for "Beef Cattle Ranching and Farming" for years 2010 through 2016 and thus, concluded Mr. Guillotte was per se "raising cattle for business purposes." Accordingly, the trial court rendered judgment in favor of Farm Bureau in open court, and on November 7, 2017, the trial court signed a judgment granting Farm Bureau's motion for summary judgment. On June 1, 2018, the trial court signed an amended judgment, which again granted Farm Bureau's motion for summary judgment, but specifically dismissed plaintiffs' claims against Farm Bureau with prejudice and certified the judgment *1053 as final under Louisiana Code of Civil Procedure article 1915.[10]
Plaintiffs now appeal, contending the trial court erred in granting summary judgment by failing to recognize that genuine issues of material fact exist for the trier of fact to determine regarding whether Mr. Guillotte's conduct constituted "business pursuits" under the policy, so as to trigger the exclusionary provision of the policy, and by failing to require that Farm Bureau demonstrate that no reasonable interpretation of the policy exists that would afford coverage based upon the foregoing facts.
SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Greemon v. City of Bossier City, 2010-2828, 2011-0039 (La. 7/1/11), 65 So.3d 1263, 1267. Generally, in ruling on a motion for summary judgment, a district court cannot make credibility determinations. Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226, 236.[11] Moreover, the court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam ); Penn v. CarePoint Partners of Louisiana, L.L.C., 2014-1621 (La. App. 1st Cir. 7/30/15), 181 So.3d 26, 30. A fact is "material" when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Hardy v. Bowie, 98-2821 (La. 9/8/99), 744 So.2d 606, 610 ; Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La. App. 3d Cir. 1991), writ denied, 596 So.2d 211 (La. 1992). Simply put, a "material" fact is one that would matter at a trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and, in favor of a trial on the merits. Smith, 639 So.2d at 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Hines, 876 So.2d at 765-766.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear *1054 the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. LSA-C.C.P. art. 966(D)(2).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in LSA-C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Larson v. XYZ Insurance Company, 2016-0745 (La. 5/3/17), 226 So.3d 412, 417.
DISCUSSION
Here, the issue for determination is whether the trial court erred in failing to find the existence of a genuine issue of material fact with regard to whether Mr. Guillotte's farming activities constituted "business pursuits" under the applicable policy of insurance.
Plaintiffs contend, essentially, that the trial court erred by weighing evidence, making credibility determinations, and making findings of fact regarding whether Mr. Guillotte's activities constituted a business or business pursuits under the policy at issue, rather than simply asking whether a genuine dispute of material fact existed on the issue.
Farm Bureau, on the other hand, contends the jurisprudence, specifically Melder v. Louisiana Farm Bureau Mutual Insurance Company, 2003-2674 (La. App. 1st Cir. 2/11/05), 906 So.2d 513, writ denied, 2005-0671 (La. 5/6/05), 901 So.2d 1098, dictates that Mr. Guillotte's farming activities must per se be a business pursuit because he claimed tax deductions based on his farming operations from 2010 through 2016. Farm Bureau also contends that the jurisprudentially established elements for finding a business pursuit have been established. Farm Bureau contends that a business pursuit involves continuity of the activity and the expectation of monetary gain, and both of these elements are met in this matter. Farm Bureau asserts that under these elements, Mr. Guillotte's activities constituted a business pursuit.
An insurance policy is a conventional obligation that constitutes the law between the insurer and insured and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. LSA-C.C. art. 1983 ; Peterson v. Schimek, 98-1712 (La. 3/2/99), 729 So.2d 1024, 1028 ; Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. LSA-C.C. art. 2047. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. LSA-C.C. art. 2046.
*1055 Although the purpose of liability insurance is to afford the insured protection for damage claims, liability policies are issued primarily for the protection of the public rather than the insured. See Hickey v. Centenary Oyster House, 97-1074 (La. 10/20/98), 719 So.2d 421, 425. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and ,if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Reynolds, 634 So.2d at 1183. Finally, it is the insurer's burden to show that a loss falls within a policy exclusion. Classert v. Butler, 98-1991 (La. App. 1st Cir. 11/5/99), 746 So.2d 787, 792.
Under the policy of insurance at issue, liability coverage is excluded for damages "arising out of business pursuits of an insured. " Thus, at the summary judgment stage, Farm Bureau had the burden of proving no genuine issue of material fact existed regarding whether the damages arose out of "business pursuits." On review, we find it clear that genuine issues of material fact exist regarding whether Mr. Guillotte's fanning activities constituted "business pursuits."
First, despite Farm Bureau's heavy reliance on Melder, we find it distinguishable from the present matter. In Melder, an insured sought to recover under his homeowner's policy for damages that occurred when his shed caught fire. However, the insured admitted that he baled hay to sell and that he had upgraded his herd of cattle in an attempt to profit on their sales. Melder, 906 So.2d at 516. Moreover, the insured in Melder also held a separate policy of insurance for farming. A tractor damaged in the fire was admittedly used in the hay baling operation conducted by the insured. The trial court concluded that the shed was not "used in whole or in part for business" and thus, the policy afforded coverage. Upon review, this court took into account all of the aforementioned facts, coupled with the evidence of the tax returns, in concluding that the property damaged was "used in whole or in part for business" and reversed the trial court. The facts in Melder, however, are clearly distinguishable from the facts at hand.
First, a different provision of the insurance policy is at issue herein. We disagree with Farm Bureau's contention that this court has "adjudicated the exact Louisiana Farm Bureau 'business pursuits' exclusion," as the language of the exclusion under consideration in the instant matter clearly varies from the policy language in Melder.[12]
In Melder, the language quoted from the applicable portion of the policy at issue precluded coverage of the shed because it *1056 was "used in whole or in part for business," as it was used to store the tractor and other tools used in the insured's farming business. Importantly, the policy language varies from the policy language relied upon by defendants which excludes personal liability coverage for injury "arising out of business pursuits of an insured." The plain language of "used in whole or in part for business" is broader than "arising out of business pursuits." Indeed, this court in Melder, recognized the important difference between these provisions, stating as follows:
Most of the cases discussing "business" exceptions to coverage under homeowners insurance policies deal with "business pursuits" exceptions to liability coverage, under which liability coverage does not apply to injuries or damages arising out of any "business pursuit" of the insured or while the insured is engaged in "business activity." These cases do not provide much guidance for the situation before us, which calls for a determination of whether a damaged building was "used in whole or in part for business."
Melder, 906 So.2d at 515 (internal citations omitted). The opinion in Melder thus recognizes that these provisions are distinct, and accordingly, we find that Melder is of little use in guiding our determination of the matter presently before us.
Second, we find Richard v. Milazzo, 2001-2233 (La. App. 1st Cir. 11/8/02), 831 So.2d 1055, also relied upon by Farm Bureau, to be unpersuasive. Although Richard succinctly states "that a business pursuit must involve two elements: continuity of the activity, and monetary gain, or at least the hope or expectation of monetary gain," we find this case likewise of little use given the facts involved herein. Richard, 831 So.2d at 1058-59. Specifically, Mr. Guillotte testified that he did not always keep cattle on the property and that he had years with no cattle sales, rendering the "continuity of the activity" factor questionable and unripe for summary judgment. Further, Mr. Guillotte testified that he never expected to profit from his farming activities. Summary judgment is seldom appropriate for determinations involving subjective facts of intent, such as the intent to make a profit. Charles v. Moore Petroleum, Inc., 2017-0909 (La. App. 1st Cir. 1/23/18), 241 So.3d 1022, 1027, writ denied , 2018-0456 (La. 5/11/18), 242 So.3d 567, citing Jones v. Estate of Santiago, 2003-1424 (La. 4/14/04), 870 So.2d 1002, 1006. There are many factors for a fact finder to consider in making a determination as to whether Mr. Guillotte intended to make a profit from his farming activities, including the facts testified to above, such as Mr. Guillotte's lack of knowledge regarding farming for profit and the manner in which his animals were treated. Considering the subjective question regarding whether Mr. Guillotte intended to or expected to make a profit, we find summary judgment inappropriate. We also note that the coverage determinations in both Melder and Richard were made after a full trial on the merits; the issues were not disposed of via summary judgment proceedings.[13]
Finally, we find the trial court erred in relying solely on the statements made on the insured's federal tax returns. Statements made on a federal income tax *1057 return do not constitute conclusive proof for purposes of summary judgment.[14] See Haydel v. State Farm Insurance Company, 2005-0701 (La. App. 1st Cir. 3/24/06), 934 So.2d 726. In Haydel, a father made a claim under his umbrella insurance policy for his son's death. Insurance coverage was denied because the insurer found that the decedent was not residing in the insured's household at the time of the accident causing his death. This finding was based upon tax returns indicating that the decedent was residing with his mother and not his father, the insured. However, the father, in deposition testimony, testified that his son resided with him. The trial court granted summary judgment. This court found that the tax return evidence of residence was not dispositive and reversed summary judgment, finding that material issues of fact existed and that summary judgment had been improperly granted. Haydel, 934 So.2d at 730 ; see also Jacobs v. Kimbrough, 376 So.2d 1273, 1275 (La. App. 2nd Cir. 1979) (wherein the Second Circuit Court of Appeal held that income tax returns are not conclusive evidence for purposes of fixing damages for loss of wages); see also Betz v. Riviere, 211 La. 43, 29 So.2d 465, 472 (1947).
Moreover, although the trial court found that the tax returns were akin to a signed affidavit, this court's jurisprudence also indicates that conflict between an affidavit and deposition testimony may preclude summary judgment.[15] Cf. Bradford v. Coody, 2008-1059 (La. App. 1st Cir. 12/23/08), 6 So.3d 815, 819. As indicated by the testimony above, there is a clear conflict herein between the characterization of Mr. Guillotte's farming activities on his federal tax returns and his sworn deposition testimony.
In addition to Mr. Guillotte's testimony, the testimony of Dr. Page likewise supports the conclusion that Mr. Guillotte's farming activities were not "business pursuits." Dr. Page attested that at least 40 acres of land and 20 cattle is necessary to run a cattle business. Mr. Guillotte only had 5 cows and approximately 20 acres of land, only 6 to 7 acres of which was usable. This evidence created genuine issues of material fact which cannot be resolved without weighing evidence and making credibility determinations, neither of which is proper in considering a motion for summary judgment. Here, the testimony of Mr. Guillotte and Dr. Page was essentially disregarded from consideration.
Although a fact finder may ultimately conclude that Mr. Guillotte's activities constituted "business pursuits," considering the credibility issues that must be resolved and genuine issues of material fact that remain herein, this determination is not proper for summary judgment. Having found that genuine issues of material fact exist, we pretermit discussion of whether Farm Bureau carried its burden of proving that no reasonable interpretation of the *1058 policy would provide coverage under the given facts.
CONCLUSION
After carefully considering the record herein, we find genuine issues of material fact exist precluding summary judgment at this juncture. For the above and foregoing reasons, the June 1, 2018 judgment of the trial court, which granted summary judgment in favor of the defendant, Louisiana Farm Bureau Casualty Insurance Company, and dismissed the claims of Curtis Washington and Almallica Allen against Louisiana Farm Bureau Casualty Insurance Company with prejudice, is hereby reversed. This matter is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against the defendant, Louisiana Farm Bureau Casualty Insurance Company.
RULE TO SHOW CAUSE ORDER RECALLED; JUDGMENT REVERSED; REMANDED.
McClendon, J. concurs and assigns reasons.

For ease, only Mr. Guillotte is referred to as the policyholder herein, although the policy was in fact issued in both his and his wife's names.

"Business" is defined in the policy as "trade, profession or occupation including farming."

According to his deposition testimony, at one point, Mr. Guillotte did sell some chickens because his family was leaving for a vacation, and he did not want to have to find someone to feed the chickens while they were away. Mr. Guillotte has also sold goats in the past when he determined he had too many or when the family did not have any cows and "needed to show some kind of income" for tax purposes. Mr. Guillotte essentially acquired his animals, other than cows, as a result of others giving them away, rather than by buying them at auction or otherwise.

Farm Bureau recently raised as an issue the fact that the pastureland was not an insured location under the policy as if this somehow affected coverage. However, the fact that these animals were kept on the neighboring property clearly does not affect coverage and is of no moment, because the policy specifically provided coverage for injury "caused by an animal owned by or in the care of an insured " without any limitation regarding where that animal was kept. Since no real argument was made in the court below that the fact that the cows were kept on a non-insured location somehow affected coverage, we pretermit further discussion of this argument.

Mr. Guillotte testified regarding how the family's pets, including cattle, were treated. He said the donkeys and goats were pets, and the cattle, especially if they were calves, were like pets. The Guillotte family worked with the calves in an attempt to make them friendlier, so they could be family pets. Mr. Guillotte tried bottle-feeding calves at one point because he assumed if they were bottle fed, they would be friendlier, and he could eventually play with the cows. He and his family also named the cows like pets. Mr. Guillotte and his family liked spending time with the animals. Also, the Guillotte family never consumed their animals.

Mr. Guillotte testified that he did not know how a price was set for a cow at auction, did not have any knowledge regarding what a "good price" for a cow was, or how to determine the market value of a cow. Mr. Guillotte also did not know how to distinguish one breed of cattle from another.

Mr. Guillotte once attempted to allow two of his cows to breed, but since he was unfamiliar with breeding cattle, one pregnant cow died trying to give birth, so he sold the second pregnant cow to avoid another tragedy.

On Mr. Guillotte's federal tax return for 2015, the year of the accident, Form 1040, line 34, indicates Mr. Guillotte had a loss of $28,167.00 for "farm income or loss." The same form indicates Mr. Guillotte earned $3,640.00 as a profit for "sales of livestock and other resale items." The sales for 2015 included sales of some goats, but testimony indicates these goats were sold merely because Mr. Guillotte needed them off of the property, so he could fix the fence. Mr. Guillotte also claimed a depreciation loss on his vehicle as part of his farming operation. The depreciation of five cows Mr. Guillotte had in 2015 as well as some equipment was also claimed in federal taxes. Mr. Guillotte also claimed other deductions for animal feed (for all animals), fuel, gasoline, oil, repairs, and maintenance. Mr. Guillotte claimed off-highway business expenses for fuel for items such as his "skid-steer," which he used to pick up feed or lift anything that was too heavy for him to handle, although he mostly used the "skid-steer" in connection with his property (referencing the property his home was on), not in relation to caring for the cattle.

Dr. Page is a full-time professor at Louisiana State University's School of Animal Science and is classified as a "Beef Cattle Specialist."

This court issued a rule-to-show-cause order on March 7, 2018 with respect to the original judgment, noting that the judgment appeared to lack the appropriate decretal language. Plaintiffs thereafter filed a motion to remand and to continue the show-cause rule. On May 14, 2018, this court granted the motion to remand for the limited purpose of allowing the trial court to sign a judgment containing appropriate decretal language, but denied the motion to continue the rule to show cause. Thus, a motion to amend judgment was filed by plaintiffs in the trial court, and on June 1, 2018, an amended judgment was signed by the trial court. The amended judgment included language indicating that the plaintiffs' claims against Farm Bureau were dismissed with prejudice. Since the judgment dismisses the plaintiffs' claims against Farm Bureau, this constitutes a final judgment subject to immediate appeal pursuant to LSA-C.C.P. art. 1915(A)(1). Thus, the previously recognized deficiency is cured, and as such, we recall the March 7, 2018 show-cause order. We note the trial court also designated the judgment as final and appealable pursuant to LSA-C.C.P. art. 1915, which designation has no effect on the already final judgment and is superfluous.

Superseded on other grounds as stated in Adolph v. Lighthouse Property Insurance Corporation, 2016-1275 (La. App. 1st Cir. 9/8/17), 227 So.3d 316.

We recognize that the definition of "business" in Melder is the same as the definition of "business" in the policy at issue herein, but this is not dispositive in guiding our analysis because, at best, there exist genuine issues of material fact regarding whether Mr. Guillotte's farming activities could even be considered a "trade, profession or occupation" as required by the plain language of the definition of "business." We note that although Farm Bureau quotes the definition of business in its brief, it does not suggest that farming was Mr. Guillotte's "trade, profession or occupation." Indeed, the record does not support such a conclusion. Rather, the record before us suggests that Mr. Guillotte's "trade, profession or occupation" was his employ at the Valero Refinery. We recognize that an individual may have more than one occupation, but again note that Farm Bureau has failed to make the requisite showing that the facts establish that farming was actually a "trade, profession or occupation" of Mr. Guillotte's. Rather, in claiming it is entitled to summary judgment in its favor, Farm Bureau focuses on whether farming was a "business pursuit" as it has been defined in the applicable case law.

Indeed, in Richard, the insurer filed a motion for summary judgment, prior to trial, seeking to be dismissed based on the argument of no coverage due to the business pursuits exclusion. The motion was denied, although at trial, the trial court found no insurance coverage existed due to the business pursuits exclusion. Richard, 831 So.2d at 1057. This court reversed the trial court and held that insurance coverage applied. Richard, 831 So.2d at 1059.

Also guiding in our determination is the fact that, as mentioned above, liability insurance is for the protection of the public, not only the insured. Thus, taking the tax returns as conclusive proof regarding whether Mr. Guillotte was operating a business would wrongfully deprive the plaintiffs, the primary party whom liability insurance is meant to protect, of a true determination regarding whether a business was indeed being operated.

By this statement, we do not imply that a material issue of fact may be created merely by an individual testifying to one fact, then signing an affidavit attesting to the opposite fact at a later date. However, in some circumstances, especially as those presented herein, a conflict between facts attested to in previously signed documents, unrelated to the present litigation, and facts attested to in a later deposition may, in particular, raise an issue of credibility, which is not appropriately considered on summary judgment.